**MARTHA M. HALL**
Attorney at Law
California Bar No. 138012
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone:  (619) 544-1451
Facsimile: (619) 544-1473

Attorneys for Defendant **BOOKER**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. GONZALO P. CURIEL**)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **AARON A. BOOKER,** ) <br> ) <br> Defendant. ) <br> ) | Criminal No.  18-CR-2611-GPC <br><br> **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS** |

**I.**

**STATEMENT OF FACTS**

A. History and Background Facts

Mr. Booker is charged in a single count indictment with knowingly possessing, transporting, concealing, storing, and disposing of "stolen explosive materials, that is, approximately 20 MK3A2 grenades, also known as G911 grenades, which had been shipped and transported in interstate commerce, knowing and having reasonable cause to believe that the explosive materials were stolen," in violation of Title 18 U.S.C. §§ 842(h) and 844(a)(1).  The grenades were discovered missing from the USS Pinckney (a Navy Ship) on February 8, 2017.

During the investigation of the missing grenades, Mr. Booker was interrogated twice, on March 13, 2017 and again on May 25, 2017.  He was not arrested on either occasion.  However, on May 25, 2017, his iPhone 6 Plus was seized from him without

a warrant.  Moreover, during the May 25th interrogation, after Mr. Booker asserted his right to counsel, Warpinski surreptitiously, and without consent, recorded Mr. Booker's passcode when Mr. Booker used his cell phone to call command requesting his anti-depressant and anti-anxiety medication.

      Mr. Booker was arrested a year later, on April 24, 2018, when he was at his post with the US Navy as an instructor at the Navy Recruiting Training Command (RTC) in Great Lakes, Illinois.  Mr. Booker was arraigned on the Complaint by the District Court for the Northen District of Illinois, in Chicago and released on bond and ordered to appear in the Southern District of California.  The Indictment was filed on May 23, 2018, in San Diego and Mr. Booker was arraigned on May 24, 2018.  Aaron Booker has remained on bond with incident.

      The USS Pinckney is a US Navy destroyer vessel, to which approximately 310 -320 sailors are posted.  Aaron Booker was  assigned (or posted to) the USS Pinckney intermittently during 2016.  In January 2017, Mr. Booker left the Pinckney for his "dream job" as an instructor at the RTC in Great Lakes.  His last day on the Pinckney was January 8, 2017, but he returned to the Pinckney to sign his "detachment" papers on February 14, 2017.  Mr. Booker reported for duty at the RTC in Great Lakes on March 6, 2017.

      On February 8, 2017, sailors aboard the USS Pinckney discovered 20 grenades were missing from one of the lockers on board.  On March 13, 2017, NCIS Agent Warpinski traveled to Chicago to interrogate Mr. Booker.  Mr. Booker was not arrested on March 13, 2017.  On April 20, 2017, Arizona Department of Public Safety (AZPDS) Officer John Bottoms claimed that an unidentified person, claiming to be an Orange County Swat Officer, gave him a backpack containing 18 grenades.  According to Bottoms, the putative officer claimed he saw the backpack on the side of Interstate15 while stopped due to a traffic jam caused by a mobile home fire.  AZPDS Officer Bottoms was responding to the fire and traffic jam on Interstate 15

when the unidentified individual approached him and gave him the backpack. The backpack was a standard issue black backpack sold at Naval Exchanges. The small tag inside the backpack had Mr. Booker's name written on it in magic marker. Bottoms did not write down the so-called officer's name or shield number. Nor was Bottoms bothered by the individual's removal of the backpack (and grenades) from the location where they were allegedly found.

B.  <u>Facts Specific to the iPhone 6 Plus</u>

Over a month after the Bottoms received the backpack full of grenades, NCIS Agent Warpinski returned to RTC, Great Lakes, to re-interrogate Mr. Booker. Command called Mr. Booker the night before, instructing him to report to the NCIS offices the following day. On May 25, 2017, Mr. Booker reported to the NCIS offices.  He asserted his right to counsel upon being read his *Miranda* rights. (TR, p. 6; 8:56:46).

The government concedes that Mr. Booker's iPhone 6 Plus was seized that day by the NCIS agents. See, ECF Doc. 43, p.4, lines 9-10. However, they did not have a warrant to seize or search the iPhone 6 Plus phone on May 25, 2017. Nor did Mr. Booker consent to a search or seizure of his phone. In fact, Mr. Booker repeatedly refused to consent to the search of his cell phone during the lengthy interrogation. (TR pp. 35, 47-48).  Yet, NCIS officers kept his iPhone 6 Plus. Not until June 2, 2017 – nine days after the phone was seized – did Warpinski apply for and receive a warrant to search the iPhone 6 Plus seized on May 25, 2017. (See, ECF Doc. 39-2, Warrant to Search iPhone 6 Plus, signed June 2, 2017).

Mr. Booker's iPhone 6 Plus was passcode protected. Mr. Booker did not give the agents his passcode. During the interrogation, when Mr. Booker told the agents that he needed his anti-depressants/anti-anxiety medication, the agents gave him his cell phone ostensibly so he could call his command to request his medication. (TR p. 40). Mr. Booker attempted to "open" his phone with the passcode under the table to

3

avoid prying eyes, Warpinski instructed Mr. Booker to put the phone on the table (in his line of sight). (TR p. 40; 10:01). On the video Warpinski can be seen watching as Mr. Booker keys in his passcode and then writing the passcode down on his notepad. (10:01-10:02; TR p. 40).

The passcode was essential to the search of the iPhone 6 Plus. Without the passcode, the agents would not have been able to access the phone and the data stored on the phone. This fact is established by the agents' inability to open Mr. Booker's iPhone 7 seized a year later when he was arrested on April 24, 2018. As the government conceded, it was never able to break through the passcode protection on the iPhone 7 and never retrieved any data from that phone. (ECF 43, p. 5, lines 5-6). In fact, the government returned the iPhone 7 to Mr. Booker at one of the previous motion hearings before this Court. Without the stolen passcode, Warpinski would not have been able to search Mr. Booker's iPhone 6 Plus either.

Mr. Booker moves this Court to suppress the passcode to the iPhone 6 Plus and all the statements and information seized from his iPhone 6 Plus under the Fourth, Fifth, and Sixth Amendments as well as *Miranda*.

## II.

**THE ILLEGAL SEIZURE OF THE PASSCODE TO MR. BOOKER'S iPHONE 6 PLUS, AFTER MR. BOOKER'S INVOCATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL, VIOLATED THE FOURTH, FIFTH AND SIXTH AMENDMENTS, AS WELL AS *MIRANDA*.**

Warpinski's surreptitious viewing of Mr. Booker's passcode to his cell phone and copying the passcode for later use constituted a search in violation of the Fourth Amendment. At the time Warpinski spied on Mr. Booker and took note of his passcode, the agents had no warrant compel and seize the passcode or to search the phone. In addition, the seizure of the passcode violated Mr. Booker's Fifth Amendment right not to be compelled to give testimony against himself. Finally, the passcode (and the subsequent search and seizure of Mr. Booker's statements on the

phone messaging applications) violated his Sixth Amendment and *Miranda* rights since he had asserted his right to counsel and asserted his rights under *Miranda* **prior** to Warpinski's surreptitious seizure of his passcode.

With the advances in technology, the Supreme Court has explicitly recognized that today's cell phones are entitled to greater privacy protection by virtue of the amount of personal data stored on them, and held that an unlocked smart phones cannot be searched without a warrant. *Riley v. California*, 573 U.S. 373, 384-85, 393-94 and 397-99 (2014).  The special protection afforded cell phones under the Constitution was reaffirmed in *Carpenter v. United States*, ___ U.S. ___, 138 S.Ct. 2206, 2213 (2018), wherein the Supreme Court held that citizens have a cognizable expectation of privacy in the location data which is stored on a cell phone or with the service provider.  *Carpenter v. United States*, ___ U.S. ___, 138 S.Ct. 2206, 2213 (2018).

A. <u>Warpinski's Search And Seizure of the Passcode Violated the Fourth Amendment</u>.

In *Riley v. California*, 573 U.S. 373, 393-94 (2014), the Supreme Court unequivocally held that a smart phone, with all of its personal and intimate data, is protected against warrantless and unreasonable searches and seizures under the Fourth Amendment.  In fact, the Supreme Court observed, "a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." <u>Id</u>. at 397-98.  In the twenty-first century, the right of all women and men to be secure in the data on their cell phones "'and there be free from unreasonable governmental intrusion'" stands "'[a]t the very core' of the Fourth Amendment." *Kyllo v. United States*, 533 U.S. 27, 31 (2001), quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961). "Modern cell phones are not just another technological convenience. With all they contain and all they may

1  reveal, they hold for many Americans 'the privacies of life,' . . . . The fact that
2  technology now allows an individual to carry such information in his hand does not
3  make the information any less worthy of the protection for which the Founders
4  fought. Our answer to the question of what police must do before searching a cell
5  phone seized incident to an arrest is accordingly simple—get a warrant." *Riley*, at
6  403.

7  Here, Warpinski's requirement that Mr. Booker place the cell phone in his line
8  of sight (rather than under the table as he attempted to do) and then surreptitious
9  capture of the passcode constitutes a warrantless search. *Arizona v. Hicks*, 480 U.S.
10 321, 325 (1987) (holding the movement of stereo equipment to view the serial
11 number was a search, which was invalid due to the lack of a warrant or any valid
12 exception).  The *Hicks* Court held that the movement of the stereo in order to see and
13 record the serial numbers, an "action, unrelated to the objectives of the authorized
14 intrusion, which exposed to view concealed portions of the apartment or its contents,
15 did produce a new invasion of respondent's privacy unjustified by the exigent
16 circumstance that validated the entry." *Hicks*, at 325.  So too, here, Warpinski's
17 command to Mr. Booker that he place the cell phone on the table and surreptitious
18 observation and copying of the passcode were actions that invaded Mr. Booker's
19 legitimate expectation of privacy.  These actions constituted "a new invasion" of Mr.
20 Booker's privacy "unjustified" by any warrant or exception to the warrant.

21 Following these cases, the U.S. District Court for the Northern District of
22 California held that a search warrant requiring those present at the search of the
23 residence to input their biometric information to unlock a phone exceeded the bounds
24 of a lawful search under the Fourth Amendment. *In the Matter of the Search of a*
25 *Residence in Oakland, California*, 354 F.Supp.3d 1010, 1014 (2019).  First, the court
26 held there was not probable cause sufficient to "to compel any person who happens to
27 be at the Subject premisses at the time of the search to provide a finger, thumb or
28

6

other biometric feather to potentially unlock any unspecified digital device." *Ibid.* In addition, the *Oakland* Court found the portion of the warrant authorizing seizure of biometric information to open digital devices was overbroad, in violation of the Fourth Amendment. *Ibid.*

At the time Warpinski insisted that Mr. Booker place his phone on the table (in his line of sight) and surreptitiously copied the passcode, he did not have a warrant for the search and seizure of the passcode or even the iPhone 6 Plus phone. Nor did Mr. Booker consent to a search or seizure of his phone. The search and seizure of the passcode violated the Fourth Amendment and all fruits of that illegal search must therefore be suppressed. The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search . . . ." *Murray v. Untied States*, 487 U.S. 533, 536 (1988) (citing *Weeks v. United States*, 232 US. 383 (1914)). It also prohibits officers from testifying as to knowledge acquired during an unlawful search. *Id.* (citing *Silverman v. United States*, 365 U.S. 505 (1961)). "Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search . . . ." *Id.* Such derivative or indirectly acquired evidence – "fruit of the poisonous tree" – must also be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Accordingly, the passcode and all information seized from the iPhone 6 Plus or acquired from the information on the iPhone 6 Plus must be suppressed.

B. <u>Taking the Passcode Constituted a Violation of Mr. Booker's Fifth Amendment Rights.</u>

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V. The Supreme Court has recognized that courts have an obligation to safeguard constitutional rights and cannot permit those rights to be diminished merely due to the

advancement of technology. *Carpenter v. United States*, __ U.S. ___, 138 S.Ct. 2206, 2214 (2018) (quoting *Kyllo v. United States*, 533 U.S. 27, 36 (2001)). Courts that have addressed the passcode issue have found that a passcode cannot be compelled under the Fifth Amendment, because the act of communicating the passcode is testimonial, as "[t]he expression of the contents of an individual's mind falls squarely within the protection of the Fifth Amendment." See *Doe v. United States*, 487 U.S. 201, 219 (1988) (Stevens, J., dissenting) (citing *Boyd v. United States*, 116 U.S. 616, 633-635 (1886); *Fisher v. United States*, 425 U.S. 391, 420 (1976) ); see also *United States v. Kirschner*, 823 F.Supp.2d 665, 669 (E.D. Mich. 2010) (citing *Doe*, 487 U.S. at 208 n. 6, 108 S.Ct. 2341); *Com. v. Baust*, 89 Va. Cir. 267, 2014 WL 10355635, at *4 (2014). The *Doe* Court explained, "There are very few instances in which a verbal statement, either oral or written, will not convey information or assert facts. The vast majority of verbal statements thus will be testimonial and, to that extent at least, will fall within the privilege." *Doe*, at 213–14.[1]

In *Oakland, supra*, the Court held that the Fifth Amendment prohibited the government from compelling the suspects to divulge their passcodes, noting:

> In fact, the prejudice that suspects may suffer should the Fifth Amendment be ignored at this juncture – both due to the practical

---

[1] These cases – and others cited in *Oakland* – all involve a court order for the production of the passcode or biometric information in the form of an application for a search warrant or subpoenas for passcodes (which are then sought to be quashed). Our case is different insofar as at the time Warpinski surreptitiously captured Mr. Booker's passcode, he had no warrant and no subpoena for either the passcode or the contents of the cell phone. Thus the "foregone conclusion doctrine" – which is an exception to the application of the Fifth Amendment to the act of production in response to a subpoena – does not apply here. Moreover, the *Oakland* Court noted that due to the unique capability of a cell phone to contain more private information that even a house or a safe, "any argument that compelling a suspect to provide a biometric feature to access documents and data is synonymous with producing documents pursuant to a subpoena would fail." *Oakland*, at 1017 (citing *Riley*, at 398-99).

8

> difficulty in prevailing on a motion to suppress and the fact that they are not represented in the warrant process – gives rise to the moral imperative demanding consideration of the Fifth Amendment. To do otherwise would be a miscarriage of justice.

*Ibid.* at 1013.

In the Oakland case, the police sought to compel any person at the "subject premises" to provide a finger, thumb, or any other biometric feature to unlock any digital device seized during a search. After finding that provision of the warrant overbroad, the Court went on to discuss the Fifth Amendment implications with regard to self-incrimination. *Id*. at 1014-1018. The *Oakland* Court recognized that while technology is outpacing the law, citizens deserve protection when using new technology and the average citizen is not contemplating waiving their rights when buying a new phone or other device.

The Fifth Amendment privilege protects one from furnishing a link in the chain of incrimination when that link involves the suspect being required to testify against himself via a communication – a passcode. Because biometric features (which unlock of call phone) are functionally equivalent to passcodes insofar as both "secure the owner's content" on the device, biometric features are protected just as passcodes are protected. *Id.* at 1015. The *Oakland* Court also recognized that certain applications within the phone containing sensitive information, like banking or health records, require the biometric data or passcode in order to access the application's information. *Id*. at 1016. The court then analogized such information to responses to questioning pursuant to a polygraph examination, which would of course be considered testimonial under *Schmerber v. California*, 384. U.S. 757, 764 (1966). In sum, the passcode is testimonial and therefore protected by the Fifth Amendment. The taking (compelling) of the passcode was therefore a violation of Mr. Booker's Fifth Amendment rights.

9

C.  <u>The Passcode Was A Statement Taken in Violation of Mr. Booker's Sixth and Fifth Amendment Rights</u>.

As has been briefed extensively before this Court (ECF Docs 27, 42, 54, 61, 67 & 69), the statements of Mr. Booker on May 25 were taken in violation of his rights under *Miranda* and the Sixth Amendment.  Mr. Booker invoked his right to counsel at the beginning of the interrogation and twice invoked his right silence by telling the agents he wanted to "stop" or terminate the interrogation. The agents did not abide by the law or his invocations.  Instead, they repeatedly used strong-arm tactics to scare and intimidate Mr. Booker in order to illegally elicit statements.

Throughout the interrogation, Mr. Booker indicated he was on anti-depressant and anti-anxiety medications.  The agents used Mr. Booker's vulnerability as a rouse to trick him into inputting his passcode to his cell phone where they could see and capture the passcode.  This they did after Mr. Booker invoked his right to counsel.

In a similar situation, the District Court for the Eastern District of New York held that asking the defendant for his passcode to his iPhone 5 violated *Miranda* leading to the suppression not only of the passcode itself, but of the two searches of the phone made possible by the fact the agents had the passcode. *United States v. Djibo*, 151 F.Supp.3d 297 (E.D.N.Y. 2015).  The *Djibo* Court discussed and applied both *Riley, supra,* and *United States v. Patane*, 542 U.S. 630 (2004).  Articulating many of the arguments made by Mr. Booker in ECF Doc. 61, the *Djibo* Court held that the first warrantless search of the iPhone 5 (using the passcode) and the later search of the iPhone 5 with a warrant were illegal, holding, "any documents obtained by virtue of Djibo providing his passcode are suppressed as either a fruit of the unlawful inquiry by [HSI Agent] Wilburt after the CBP search ended, and/or fruit of the admittedly poisonous 'peek' [at the contents of the iPhone 5]." *Id.* at 310.

Just as the passcode in *Djibo* was taken in violation of *Miranda*, so too was the passcode for Mr. Booker's iPhone 6 Plus taken in violation of *Miranda* and his Sixth

1  Amendment right to counsel.  For the same reasons articulated in *Djibo*, the fruits of
2  the illegally obtained passcode should be suppressed here.  Therefore all evidence on
3  the phone (especially statements in messaging apps and emails) must be suppressed.
4  See also, CM/ECF Doc. 61, pp. 5-12; *United States v. Patane*, 542 U.S. 630 (2004).
5        Moreover, because Mr. Booker's revelation of the passcode was involuntary in
6  this case, i.e., he was tricked into inputting the passcode within Warpinski's line of
7  sight, all fruits of this involuntary statement must be suppressed as a fruit of an
8  involuntary statement.  *Collazo v. Estelle*, 940 F.2d 411 (1991); see also CM/ECF
9  Doc. 61, pp 8-11.

## III.

## **CONCLUSION**

Here the conduct of the agents constituted a clear and multifaceted violation of Mr. Booker's rights.  The agents asked for consent to search his phone and Mr. Booker clearly and repeatedly denied consent.  (TR pp. 35, 47-48).  The agents advised Mr. Booker of his rights under *Miranda* and Mr. Booker invoked his right to counsel and right to remain silent.  (TR p. 6).  Despite Mr. Booker's clear and repeated statements invoking his right to protect the contents of his phone under the Fourth, Fifth and Sixth Amendments, Warpinski illegally and unconstitutionally seized the passcode.  Without the passcode, agents would have been unable to access and search the iPhone 6 Plus.  Thus, all information obtained directly or indirectly from the iPhone 6 Plus must be suppressed as a fruit of the poisonous "peek".

                      Respectfully submitted,
                      S/Martha M. Hall

Dated: May 24, 2019       **MARTHA M. HALL**
                      Attorney at Law
                      Attorney for Booker